**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Ngambula Wabibi, *individually
and as surviving parent of* Francis
Wabibi, et al.,

     Plaintiffs,

         Case No. 1:24-cv-5305-MLB

v.

Fulton County, Georgia, et al.,

     Defendants.

_____/

**<u>OPINION & ORDER</u>**

Francis Wabibi died while being held at the Fulton County jail. His parents and the administrator of his estate sue Fulton County and two people who work at the jail—Sheriff Patrick Labat and Lieutenant Antonio Richardson—for causing that death. (Dkt. 36.) The Court dismissed Plaintiffs' initial complaint as a shotgun pleading (Dkt. 35), and Defendants move to dismiss Plaintiffs' amended complaint for the same reason and others. (Dkt. 38.) The Court dismisses the amended complaint for failure to state a claim.

## I.    Background

Mr. Wabibi suffered from mental health problems, including schizophrenia.  (Dkt. 36 ¶ 27.)  In September 2022, police arrested him for loitering and obstructing a police officer and took him to the Fulton County Jail.  (*Id.* ¶¶ 29, 32.)  On October 31, 2022, Mr. Wabibi's cellmate attacked him, making his nose bleed.  (*Id.* ¶ 33.)  Two officers responded to the incident and placed Mr. Wabibi in a different cell.[1]  (*Id.* ¶¶ 34–43.)  Four days later, Mr. Wabibi's new cellmate hit him in the head.  (*Id.* ¶ 54.)  It is unclear whether Mr. Wabibi was injured, but a detention officer told Lieutenant Richardson about the incident.  (*Id.* ¶ 54.)  Lieutenant Richardson recommended placing Mr. Wabibi in a different cell.  (*Id.* ¶ 57.)

Guards put him in a cell with Simeon Keith Lucas.  (*Id.* ¶ 62.)  Plaintiffs allege Lucas was a "known violent inmate who had previous

---

[1] Plaintiffs' initial complaint included charges against several other jail employees who moved Mr. Wabibi from cell to cell or otherwise interacted with him.  Those defendants included Detention Officer S. Tilley, Sergeant William Peek, Captain Jamarl Johnson, and Cadet Deputy Anthony Okonkwo.  Plaintiffs did not include claims against those people in their amended complaint, and the Court concludes Plaintiffs abandoned the claims.  For that reason (and for clarity) the Court does not mention these individuals by name in its discussion of the facts.

convictions for robbery, terroristic threats, stalking, intimidation, larceny, and cocaine-related offenses." (*Id.*) Plaintiffs further allege—upon information and belief—that Lucas had a violent reputation and weighed approximately 65 pounds more than Mr. Wabibi. (*Id.* ¶¶ 63–64.) On November 23, 2022, an officer found Mr. Wabibi dead on the floor of his cell with his hands and ankles bound. (*Id.* ¶ 67.) Lucas had strangled and beaten Mr. Wabibi to death. (*Id.* ¶¶ 69, 74-76.)

Plaintiffs' amended complaint asserts four federal constitutional claims: a failure to protect claim against Lieutenant Richardson, two supervisory liability claims against Sheriff Labat, and a municipal liability claim against Fulton County. (*Id.* ¶¶ 148–216.) The complaint also seeks damages, attorneys' fees, and costs.

## II. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009). A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. At the stage of a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

## III. Discussion

### A. Shotgun Pleading

The Court dismissed Plaintiffs' first complaint as a shotgun pleading. (Dkt. 35.) Defendants say Plaintiffs failed to fix those problems and the amended complaint remains a shotgun complaint. (Dkt. 38-1 at 5–9.) Though by no means a model of clarity, the amended complaint does not contain the defects that doomed Plaintiffs' prior complaint.

The Court, for example, concluded the original complaint "violate[d] the rule requiring discrete claims to be separated by count" because each count "glommed together" various theories of liability against several Defendants, leaving them without adequate notice of which claims were asserted against which Defendant. (Dkt. 35 at 5.) Plaintiffs fixed that, with each count seeming to involve only one Defendant. (Dkt. 36 ¶¶ 148–216.) Even so, Defendants argue that, "[while] the headings in the

4

amended complaint make reference to one claim, the body of the amended complaint tells a different story." (Dkt. 38-1 at 8.) Specifically, they argue that, even though Plaintiffs label Counts II and II as involving Sheriff Labat's "supervisory liability," the allegations within those counts "relate[] to [unconstitutional] customs…, failure to supervise, … [and] deliberate indifference"—claims that do not fall under the heading of "supervisory liability." (*Id.*) So the Court begins by determining whether Plaintiffs seek to assert direct claims against Sheriff Labat or to hold him responsible in his supervisory capacity.

Under Eleventh Circuit precedent, Plaintiffs could hold Sheriff Labat directly liable for deliberate indifference to Mr. Wabibi by showing Sheriff Labat "subjectively knew of [a] substantial risk of serious harm" but "knowingly or recklessly disregarded that risk by failing to take reasonable measures to abate it" and that the risk caused Mr. Wabibi's injuries. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (internal citation omitted); *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1028 (11th Cir. 2001) ("An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.")

5

(internal citation omitted).  On the other hand, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1354–1355 (11th Cir. 2022).  To establish Sheriff Labat's supervisory liability under § 1983, Plaintiffs must plausibly allege either his personal participation in unconstitutional conduct by one of his subordinates or some "causal connection" between his actions and unconstitutional conduct by one or more of his subordinates. *Myrick v. Fulton County,* Geogia, 69 F.4th 1277, 1297 (11th Cir. 2023).  Plaintiffs can establish a causal connection sufficient to establish Sheriff Labat's supervisory liability by (1) showing Sheriff Labat knowingly failed to correct a "history of widespread abuse" that led to a subordinate's unconstitutional conduct, (2) showing Sheriff Labat adopted a custom or policy that resulted in a subordinate's unconstitutional conduct, or (3) demonstrating facts that "support an inference that [Sheriff Labat] directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1298 (emphasis added).

The best the Court can tell, Plaintiffs do not allege Sheriff Labat's direct liability in Counts II and III. Indeed, they label these counts as asserting "supervisory liability." Within the supervisory liability rubric, they don't allege his "personal participation" in any conduct involving Mr. Wabibi. Rather, Counts II and III include a hodgepodge of allegations that appear directed at the second avenue for establishing a "causal connection," specifically that Sheriff Labat adopted customs or policies that resulted in his subordinate's deliberate indifference to Mr. Wabibi's constitutional rights. In Count II, Plaintiffs allege Sheriff Labat oversaw a custom of "inadequate supervision/staffing" and, in Count III, a custom of "inadequately investigating violence." (Dkt. 36 ¶¶ 169–72, 188.) Plaintiffs then allege those two customs "resulted in [Sheriff] Labat's subordinates acting with deliberate indifference to Mr. Wabibi's constitutional rights." (*Id.* ¶¶ 172, 191.) Those allegations should have tipped off Defendants that Plaintiffs were proceeding under the "custom or policy" avenue for establishing a "causal connection" between Sheriff Labat and a subordinate's conduct that violated Mr. Wabibi's constitutional rights.

Admittedly, a few allegations could be read to suggest a direct claim against Sheriff Labat under *Hale* or *Marsh*. (*See id.* ¶¶ 174–75, 193–94.) Indeed, Plaintiffs cite *Hale* in Counts II and III. (*Id.* ¶¶ 176, 195.) Those allegations, however, do not transform those counts into something other than claims for supervisory liability.[2] Most of the allegations in Counts II and III describe policies carried out by Sheriff Labat's subordinates

---

[2] The Court believes Plaintiffs' confusion (evidenced by their possible intermingling of theories of direct and supervisory liability in Counts II and III) and Defendants' confusion (reflected in their argument that the amended complaint remains a shotgun pleading for that reason) likely stem from the murky distinction between "direct" deliberate indifference claims and (some) supervisory liability claims under Eleventh Circuit precedent. As explained, *Marsh* and *Hale* found sheriffs *directly* liable for knowing of and failing to "respond reasonably to" a "substantial risk of serious harm" that caused the plaintiff a constitutional injury. *See Hale*, 50 F.3d at 1582–85; *Marsh*, 268 F.3d at 1028–34. But *Myrick* considered substantially similar claims and identified the "first" avenue of supervisory liability as involving "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation." 69 F.4th at 1289. The Court sees little daylight between those claims. Both entail showing (1) the sheriff was aware of some substantial risk to inmate safety at the facility, (2) did not respond in a reasonable manner to mitigate the risk, and (3) that failure resulted in someone violating a prisoner's constitutional rights. All this to say, even if Plaintiffs' amended complaint contains some allegations purporting to raise a "direct" claim against Sheriff Labat a la *Marsh* or *Hale*, those allegations can be construed as sounding in the "first avenue" of supervisory liability—a theory of liability the Court does not believe Plaintiffs intend to assert but considers below in an abundance of caution.

and explicitly tie Mr. Wabibi's death to the subordinates' execution of those policies (with no involvement by Sheriff Labat).  In that context, any allegations suggesting a "direct" claim are a non-sequitur.  Those isolated allegations do not counteract the main thrust of Counts II and III which, read as a whole, assert a causal connection between Sheriff Labat's supervisory conduct and the deliberate indifference of *others* under the "second avenue" of supervisory liability.  (*See, e.g., id.* ¶¶ 168–72, 176, 187, 191.)  Given the substance of Counts II and III and Plaintiffs' identification of them as asserting "supervisory liability," the Court finds "Defendants [had] adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

A couple of caveats.  The Court construes Counts II and III as asserting *only* supervisory liability claims against Sheriff Labat and relying only on the "second avenue" for demonstrating a "causal connection."[3] The Court dismissed the original complaint in part because

---

[3] There are no allegations that Sheriff Labat "directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed

it "bundle[d] together distinct theories of liability." (Dkt. 35 at 5.) The Court assumes Plaintiffs complied with that Order and thus construes these counts as asserting only one theory of liability each. The Court further construes Plaintiffs' claims as seeking to hold Sheriff Labat liable for the alleged deliberate indifference of Lieutenant Richardson. Plaintiffs don't specifically identify Lieutenant Richardson as the relevant subordinate for the claims against Sheriff Labat. But that's the only possible conclusion. Plaintiffs allege in Count II, for example, that "Mr. Wabibi's constitutional rights were violated by Defendant Labat's subordinates as he was left without supervision to be attacked." (Dkt. 36 ¶ 168.) And elsewhere in the amended complaint, Plaintiffs allege Lieutenant Richardson was responsible for that lack of supervision. (*Id.* ¶ 151 (alleging Lieutenant Richardson transferred "Mr. Wabibi into a cell with Loosecase Lucas with little to no supervision"), ¶ 153 (same), ¶ 154 (same).) Count III also alleges a violation of Mr. Wabibi's constitutional rights arising from his placement in the cell with Lucas, a decision

---

to stop them from doing so." *Myrick*, 69 F.4th 1298. So the Court does not consider that (third) avenue of demonstrating a causal connection.

Plaintiffs attribute to Lieutenant Richardson. (*Id.* ¶ 187.) And while Plaintiffs conclusorily allege Lieutenant Richardson knew Lucas was a threat to Mr. Wabibi (Dkt. 36 ¶¶ 45, 58, 61), they do not allege any other guard had that knowledge. All of this supports the Court's interpretation of Plaintiffs' claims in Counts II and III as alleging Sheriff Labat's supervisory liability arising from his adoption of customs or policies of "inadequate staffing/supervision" and "inadequate systems to investigate violence" that "result[ed] in [Lieutenant Richardson's] deliberate indifference" to Mr. Wabibi's constitutional rights. (Dkt. 36 ¶¶ 172, 188; *Myrick*, 69 F.4th at 1298.) To the extent the Court misconstrues Plaintiffs' intent, that's Plaintiffs' fault.

The Court's prior order also found the original complaint "violate[d] the rule against including conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." (Dkt. 35 at 5.) In doing so, the Court noted the original complaint "contain[ed] allegations about incidents that happened at the Fulton County Jail *after* [Mr. Wabibi's] death on November 23, 2022." (*Id.* at 6.) Defendants argue the amended complaint still does this because it contains several references to a November 2024 Department of Justice investigation of conditions at

11

the jail.   (Dkt. 38-1 at 7.)   Plaintiffs' amended complaint, however, removes several of the allegations postdating Mr. Wabibi's death.  And while it does reference a 2024 DOJ investigation, that investigation involved several incidents that occurred before Mr. Wabibi's death.  (*See, e.g.*, Dkt. 36 ¶¶ 111–47.)   In any event, the Court disregards any allegations about incidents that occurred afterward.

With these parameters, the Court refuses to dismiss the amended complaint as an impermissible shotgun pleading.

## B.    Failure-to-Protect    Claim    Against    Lieutenant Richardson

In Count I, Plaintiffs claim Lieutenant Richardson violated Mr. Wabibi's Fourteenth Amendment rights by failing to take reasonable steps to protect him from Lucas.  (Dkt. 36 ¶¶ 149–64.)  Although failure-to-protect claims are governed by the Eighth Amendment's Cruel and Unusual Punishment Clause, claims involving the alleged mistreatment of arrestees or pretrial detainees in custody—like Mr. Wabibi—are governed by the Fourteenth Amendment's Due Process Clause.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  In any event, Fourteenth and Eighth Amendment failure-to-protect claims apply the same standard, "so decisional law involving prison inmates applies

12

equally to cases involving arrestees or pretrial detainees." *Id.* The Court thus "may properly analyze [Mr. Wabibi's] claim under the Eighth Amendment as certainly states may not impose on pretrial detainees conditions that would violate a convicted prisoner's Eighth amendment rights." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995).

Inherent in the Eighth Amendment's right to be free from the infliction of cruel and unusual punishment is an inmate's right to be free from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This right imposes a duty on prison officials to protect inmates from other inmates. *Id.* That said, not "every injury suffered by one inmate at the hands of another" translates into a "constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To state a claim against a prison official for failing to protect one inmate from another inmate, a plaintiff must plausibly allege (1) he or she faced "a substantial risk of serious harm" while incarcerated, (2) the defendant acted or failed to act with "deliberate indifference to that risk," and (3) causation, meaning the prison official's deliberate indifference caused the plaintiff's injuries. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Deliberate indifference

requires (1) subjective knowledge of a substantial risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013). Under this standard, "liability requires consciousness of a risk." *Farmer*, 511 U.S. at 840. The defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. As such, a prisoner-plaintiff must allege "that the defendant official was subjectively aware that his own conduct—again, his own actions or inactions—put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1258 (11th Cir. 2024). In other words, that "the defendant prison official *actually* knew of a substantial risk of serious harm, not just that he *should have known.*" *Id.* at 1257 (emphasis in original).

Lieutenant Richardson argues Plaintiffs have not plausibly alleged the second element—that he was deliberately indifferent to a substantial risk of serious harm to Mr. Wabibi when he placed Mr. Wabibi in a cell with Lucas. (Dkt. 38-1 at 11–15.) Specifically, he says Plaintiffs have not plausibly alleged he had actual knowledge that Lucas posed a

14

substantial risk of harm to Mr. Wabibi. (Dkt. 38-1 at 11–15.) He instead characterizes Plaintiffs' allegations of deliberate indifference as conclusory assertions that he was aware only of "generalized facts about cellmate-on-cellmate danger." (*Id.* at 14–15.) The Court agrees with Lieutenant Richardson.

Plaintiffs identify five factors they say show Lieutenant Richardson's actual knowledge that placing Mr. Wabibi in a cell with Lucas would expose Mr. Wabibi to a substantial risk of serious harm: (1) Lucas's violent "criminal past," (2) Lucas's "violent proclivities and reputation," (3) Mr. Wabibi's "prior victimization" from former cellmates, (4) Mr. Wabibi's mental health issues, and (5) the weight differential between Lucas and Mr. Wabibi. (Dkt. 36 ¶ 150.) But even if these were "specific facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]," Plaintiffs do not allege Lieutenant Richardson was actually aware of these facts. *See Farmer*, 511 U.S. at 837. And even if Lieutenant Richardson *was aware* of some of these facts, his knowledge—at most—demonstrated a "generalized awareness of risk" of harm to Mr. Wabibi, specifically that Lucas could be a dangerous person, and that is insufficient to state a claim for deliberate indifference.

15

*See Carter v. Galloway*, 352 F.3d 1346, 1350–51 (11th Cir. 2003) (evidence guard knew inmate was "a 'problem inmate' with a well-documented history of prison disobedience and had been prone to violence" merely established a "generalized awareness of risk" but failed to show defendant guards drew an inference that inmate constituted serious threat of harm to plaintiff).

The Court concludes this for several reasons.  First, Plaintiffs fail to allege Lieutenant Richardson knew Lucas was violent.  The closest Plaintiffs come is their allegation that "[u]pon information and belief, inmate Simeon Keith Lucas earned the alias 'Loosecase' and possessed a notoriously violent reputation."  (Dkt. 36 ¶ 63.)  The Court need not assess the significance of Lucas's alleged reputation because Plaintiffs do not allege Lieutenant Richardson was aware of it.  And to plausibly allege his liability, they must do that.  Even if the Court accepted this allegation "upon information and belief" as true and even if the Court attributed that knowledge to Lieutenant Richardson, it would not be enough.  As explained, "before [a prison guard's] awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] generally problematic nature."  *Carter*, 352 F.3d at 1349; *see*

16

*also Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) ("We do not have to take as true [plaintiff's] allegations 'upon information and belief.'").   There must be evidence Lieutenant Richardson drew an inference from that awareness that Lucas posed a substantial risk to Plaintiff.   Lucas's alleged reputation as a "loosecase," even if known to Lieutenant Richardson, does not cross this threshold.   Similarly, Plaintiffs' repeated allegations that Lucas was a "known violent inmate" does not change this conclusion.   (*See* Dkt. 36 ¶¶ 59, 62.)   Not only are those allegations wholly conclusory, but they also fail to allege *Lieutenant Richardson* knew Lucas was violent and posed a significant a risk to Mr. Wabibi.   (*See* Dkt. 36 ¶¶ 63, 150.)   Plaintiffs' allegation that Lucas was violent and had convictions for violent crimes fares no better since Plaintiffs don't allege Lieutenant Richardson knew of Lucas's criminal history or concluded from it that Lucas posed a substantial risk of serious harm to Mr. Wabibi.   (*See id.* ¶¶ 59–61.)

Second, while Plaintiffs allege Lieutenant Richardson was aware of Mr. Wabibi's "prior victimization from former inmates," they do not allege he inferred a substantial risk of serious harm from this knowledge—nor could they.   (Dkt. 36 ¶ 150.)   The only prior incident Plaintiffs allege

Lieutenant Richardson knew about was the "open hand strike" Mr. Wabibi received from a former cellmate.[4] (Dkt. 36 ¶ 54.) But Lieutenant Richardson's knowledge of this relatively minor incident involving one inmate does not show he was subjectively aware of a particularized, substantial risk that Lucas would seriously harm Mr. Wabibi as opposed to a mere "generalized awareness of risk." *See Carter*, 352 F.3d at 1351; *see also Cassady v. Dozier*, 2022 WL 988315, at *11 (M.D. Ga. Mar. 31, 2022) ("Plaintiff has provided no precedent, and the Court could not on its own find any, that establishes [defendant prison official] would have subjectively known plaintiff was at a substantial risk of assault in Dorm G-2 on April 20th because she was … a prior victim of sexual assault."). Plaintiffs' allegation that Lieutenant Richardson was aware of a single instance of Mr. Wabibi's "prior victimization"—one in which he was not seriously injured, or perhaps even injured at all—does not permit the "inferential leap" that Lieutenant Richardson actually knew Mr. Wabibi faced a serious risk of being killed by Lucas. *See Carter*, F.3d at 1350.

---

[4] Plaintiffs also allege Mr. Wabibi was the victim of another assault by a cellmate (and "received a bloody nose") but don't allege Lieutenant Richardson knew about that incident. (*See* Dkt. 36 ¶¶ 33–44.)

To hold otherwise would allow a plaintiff to establish he or she faced a substantial risk of harm from every inmate once they suffered an assault from any other inmate. While the Court leaves open the idea that a plaintiff may assert a deliberate indifference claim based on his or her particular vulnerability or susceptibility to victimization, such a situation cannot arise from a single punch.

Third, Plaintiffs' allegation Lieutenant Richardson knew of Mr. Wabibi's general mental health issues is not an allegation he knew of a substantial risk of serious harm. This allegation does little more than suggest Mr. Wabibi was merely a "problem inmate," rather than an inmate whose mental health posed a substantial risk of harm to himself or other inmates. *See Carter*, 352 F.3d at 1351 ("Defendants only possessed an awareness of Inmate Barnes's propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard … Such a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement."); *contra D.M. v. Chatman*, 2015 WL 11233083, at *9 (N.D. Ga. May 19, 2015) ("Plaintiff has alleged sufficient facts at the motion to

19

dismiss stage to show that Defendants knew Patton was more than a 'problem inmate' … he was a predator, frequently attacking residents and guards alike, and thus posed a substantial risk to other residents."). And although Plaintiffs twice allege "[Lieutenant] Richardson had subjective knowledge of a substantial risk to Mr. Wabibi due to his schizophrenia," these conclusory allegations of a generalized awareness of risk—again—cannot satisfy the subjective awareness requirement on a failure to protect claim.  (Dkt. 36 ¶¶ 45, 58; *see Donaldson v. Georgia Dep't of Corr.*, 2023 WL 4290059, at *3 (M.D. Ga. June 30, 2023) (finding allegation "Defendant [prison officials] knew that [decedent] had a history of suicidal behavior and had been diagnosed with mental health conditions" was a "textbook conclusory fact" insufficient to support a claim for deliberate indifference).).  Again, to hold otherwise would place inmates with some level of mental illness in a special category without regard to each inmate's specific difficulties or any prison official's knowledge of an individualized risk.

Finally, Plaintiffs' allegation of the weight difference between Lucas and Mr. Wabibi is unavailing because they only allege this fact "upon information and belief" and fail to allege Lieutenant Richardson

was subjectively aware of the sixty-pound weight differential.  (*See* Dkt. 36 ¶ 64.)  And, at any rate, mere knowledge that one inmate is bigger and stronger than another cannot establish actual knowledge that the bigger inmate poses a substantial risk to the smaller inmate.  Being big or strong does not automatically make an inmate a threat to other inmates.

Stripping allegations made on information and belief, the complaint merely alleges Lieutenant Richardson had actual knowledge of a substantial risk of harm to Mr. Wabibi because he was aware of his general mental state and a single instance of his prior victimization. Those two allegations, standing alone, do not plausibly suggest Lieutenant Richardson was aware of more than a generalized risk of harm when he placed Mr. Wabibi in a cell with Lucas.  In effect, Plaintiffs contend only that Lieutenant Richardson "should have known" of a substantial risk of serious harm but have no allegations plausibly showing that he "actually knew" of such a risk.  *See Wade*, 106 F.4th at 1257; *see also Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) ("The district court erred by finding allegations that [defendant prison officials] 'knew or should have known' of a substantial risk of serious

21

harm sufficient to state a deliberate indifference claim.")  "Deliberate indifference, [however,] requires more than constructive knowledge." *Id.*

Plaintiffs have not plausibly alleged their failure-to-protect claim in Count I.

### C.  Supervisory Claims Against Sheriff Labat

As explained, the Court interprets Count II as asserting a § 1983 supervisory liability claim against Sheriff Labat for adopting a "custom, practice, and course of conduct" of conducting "visual security rounds rather than sufficient security rounds" and "routinely understaffing" the facility (Dkt. 36 ¶¶ 165–183) in a manner that resulted in Lieutenant Richardson acting with deliberate indifference to Mr. Wabibi's constitutional rights, and Count III as asserting a § 1983 supervisory liability claim against Sheriff Labat for overseeing a "custom, practice, and course of conduct" by which Fulton County Jail officials would inadequately investigate violence at the facility (*Id.* ¶¶ 184–202) in a manner that resulted in Lieutenant Richardson acting with deliberate indifference to Mr. Wabibi's constitutional rights.  (*See* Section III.A, *supra*; Dkt. 36 ¶¶ 172, 191.)

Even assuming Sheriff Labat adopted those customs or policies, Plaintiffs' claims still fail because they do not plausibly allege a causal connection between those customs or policies and any deliberate indifference by Lieutenant Richardson that resulted in Mr. Wabibi's death. As the Court already concluded, Plaintiffs have not plausibly alleged Lieutenant Richardson acted with deliberate indifference to Mr. Wabibi's constitutional rights. So even if a custom or policy existed, it did not result in deliberate indifference by Sheriff Labat's subordinate *in this instance*. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("[T]here can be no policy based or supervisory liability when there is no underlying constitutional violation.") And perhaps even more fundamentally, Plaintiffs neither allege the jail was understaffed nor that security rounds were inadequate on the night Lucas killed Mr. Wabibi or that those practices impacted any decision Lieutenant Richardson made that night.[5] Nor can they plausibly claim that, had Sheriff Labat identified the "root causes" of violence at the jail or implemented certain unspecified "corrective measures," Lieutenant

---

[5] In fact, Plaintiffs actually allege security rounds *did* occur on the night Mr. Wabibi was killed. (Dkt 36 ¶¶ 66–68.)

23

Richardson would have prevented Lucas—an inmate he had little reason to believe posed a threat to Mr. Wabibi—from attacking his cellmate. Thus, Plaintiffs do not plausibly allege a causal connection between any conduct by Sheriff Labat and any violation of Mr. Wabibi's constitutional rights.  In other words, Plaintiffs fail to allege Sheriff Labat adopted a custom or policy that resulted in Lieutenant Richardson acting with deliberate indifference to Mr. Wabibi's safety.

The Court has thoughtfully considered the claims it believes Plaintiffs intended to assert in Counts II and III.  But even if Plaintiffs were somehow traveling under the "first avenue" of establishing a causal connection for supervisory liability—that Sheriff Labat was on notice of the need to correct a history of widespread abuse but failed to do so— Counts II and III would still fail for two reasons.  *See Myrick*, 69 F.4th at 1298.  First, although Plaintiffs purport to describe a history of abuses at Fulton County Jail, (Dkt. 36 ¶¶ 79–134), they never plausibly allege Sheriff Labat knew about that history such that he was on notice of the need for corrective measures.  *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("The deprivations that constitute widespread abuse

24

sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.").

Second, Plaintiffs' alleged history is rife with allegations from the 2024 DOJ investigation that do not post-date Mr. Wabibi's death. As explained, the Court warned Plaintiffs that those allegations were irrelevant and should not be included in the amended complaint. (Dkt. 35 at 5–6.) Plaintiffs only complied in part, continuing to include allegations from after Mr. Wabibi's death and/or parroting conclusions from the 2024 DOJ report, with no indication those conclusions were drawn from events before Mr. Wabibi's death. (*See, e.g.*, Dkt. 36 ¶¶ 105 ("On July 13, 2023, the U.S Department of Justice Civil Rights Division (DOJ) announced it had opened a civil investigation into the conditions in Jail."); 106 ("Within weeks of opening the investigation, six more men had died in the Jail, one person was found unresponsive in his cell after his cellmate strangled him…"); 107 ("The DOJ announced on November 15, 2024 its findings that conditions of confinement at the Fulton County Jail in Georgia violate the 14th Amendment to the U.S. Constitution.").) This failure infects the entirety of Plaintiffs' allegations of a history of abuse at Fulton County Jail as the Court is unable to tell which

25

allegations it can consider and which it cannot.  *See Hines v. Jefferson*, 338 F. Supp. 3d 1288, 1307 (N.D. Ga. 2018) (plaintiff may show deliberate indifference by submitting "evidence of a history of widespread *prior* abuse by . . . personnel that would have put the [defendant] on notice of the need for improved training or supervision.") (emphasis added); *Thompson v. Sheriff, Pinellas Cnty. Fl.*, 542 F. App'x 826, 829 (11th Cir. 2013) ("We conclude that such post-incident complaints could not have put the Sheriff on notice of a need for supervision.").

These deficiencies foreclose a finding of supervisory liability on a theory of widespread abuse.  And no matter how much the Court tries, it can see no possibility that Plaintiffs assert claims under the final avenue for supervisory liability because they never suggest Sheriff Labat "directed" his subordinates in how they treated Mr. Wabibi or knew they would act unlawfully towards him.

In all, Counts II and III fail to allege plausibly the requisite "personal participation" or "causal connection" to support Sheriff Labat's supervisory liability.  Those counts are dismissed.

### D.   Municipal Liability Claim Against Fulton County

Count IV of the amended complaint brings a *Monell* claim against Fulton County for its failure to adequately fund and staff the Fulton County Jail. (Dkt. 36 ¶¶ 203–216.)  A *Monell* claim is derivative of—and thus requires—an underlying constitutional violation. *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *see also Baker v. City of Madison, Alabama,* 67 F.4th 1268, 1282 (11th Cir. 2023) ("Because there was no underlying constitutional violation, [plaintiff's] municipal liability claim against the city fails as a matter of law.")  As the Court concluded *supra*, the amended complaint fails to allege an underlying constitutional violation by Defendants Lieutenant Richardson or Sheriff Labat. Without a constitutional violation, Plaintiffs cannot maintain their *Monell* claim.

## IV.   Conclusion

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 38).

**SO ORDERED** this 31st day of March, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE